1

2 JANET M. HEROLD
Regional Solicitor
3 BRUCE L. BROWN
Associate Regional Solicitor
4 JOSEPH M. LAKE Trial Attorney
lake.joseph@dol.gov
5 California State Bar Number 246679
United States Department of Labor
6 Office of the Solicitor
300 Fifth Ave., Suite 1120
7 Seattle, WA 98104
(206) 757-6762
8 FAX (206) 757-6761

9
Attorneys for Plaintiff, Seth D. Harris
10 Acting Secretary of Labor, United States
Department of Labor

11

12                    UNITED STATES DISTRICT COURT FOR THE
                          WESTERN DISTRICT OF WASHINGTON
13

14 SETH D. HARRIS, Acting Secretary of Labor, )   Case No.: 2:12-cv-01406-RSM
   United States Department of Labor,         )
15                                            )   Hon. Ricardo S. Martinez
                   Plaintiff,                 )
16        v.                                  )   PLAINTIFF'S INTERROGATORIES ON
                                              )   DEFENDANT LANTERN LIGHT
17 LANTERN LIGHT CORPORATION, d/b/a           )   CORPORATION (FIRST SET) **AND**
   ADVANCED INFORMATION SYSTEMS, a            )   **FOURTH AMENDED ANSWERS**
18 corporation; DIRECTV LLC, a limited        )   **THEREO**
   liability company; and RAMON MARTINEZ,     )
19 an individual,                             )
                                              )
20                 Defendants.                )
   _____)

21        Now comes Plaintiff, Seth D. Harris, Acting Secretary of Labor, United States

22 Department of Labor ("Secretary"), and hereby requests, pursuant to Federal Rule of Civil

23 Procedure 33, that Defendant Lantern Light Corporation, d/b/a Advanced Information Systems

24 ("AIS") answer the following interrogatories, separately and fully in writing under oath, and

25 serve a signed copy of the answers hereto on the undersigned counsel within thirty (30) days.

*Interrogatories to AIS*                              1

**EXHIBIT D**

Defendant is reminded of its duty to supplement their responses and answers under Federal Rule of Civil Procedure 26(e)(1).

The information sought by these interrogatories relates to the period from August 21, 2009, to the present, unless the contrary is expressly stated.  Where changes have occurred during the aforementioned period which makes statements with respect to one portion of the period inapplicable to other portions of the period, such changes are to be noted, their significance explained, and the information to be given with respect to each such portion of the period, noting the approximate dates of the changes.  Where an interrogatory calls for information contained in any documents produced by Defendants pursuant to Plaintiff's Request for Production of Documents, said document may be incorporated into the interrogatory by reference, identifying the document, designating the portion of the interrogatory answered by reference and stating whether the document answers the interrogatory in whole or in part.

<u>Definitions</u>

1.      Where the word "employee" is used, it is meant to refer to both former and present employees of AIS.

2.      "Document" or "record" shall mean any written, printed, typed, electronically stored, or other graphic matter of any kind or nature and all mechanical or electronic sound recordings or transcripts thereof, in the possession and/or control of the defendants or known by the defendants to exist, and shall also mean all copies of documents by whatever means made, including, but not limited to papers, letters, correspondence, computerized files, computerized spreadsheets, telegrams, interoffice communications, memoranda, notes, notations, notebooks, reports, records, accounting books or records, schedules, tables, charts, transcripts, publications, scrapbooks, diaries, and any drafts, revisions, or amendments of the above.  "Document" should

*Interrogatories to AIS*                                2

be interpreted in the broadest possible manner to include all materials within the scope of Federal Rule of Civil Procedure 34.

      3.     "Identify" or "identity" means when used in reference to:

          a.     an individual person - his or her:

             1.     full name;

             2.     present or last known complete home address and phone number;

             3.     present or last known complete business address;

             4.     present or last known position, business affiliation, job description;

             5.     position, business affiliation and job description at the time in question, with respect to the interrogatory involved;

          b.     a document and/or record (as defined at ¶ 2):

             1.     its author;

             2.     its subject matter, title and date, and the total number of pages thereof;

             3.     its type (e.g., letters, memorandum, report, diary, chart, etc.), or some other means of identifying it;

             4.     each and every addressee;

             5.     each and every person to whom copies were sent, by whom copies were received, and who the defendant believes may have knowledge of the contents thereof;

             6.     its present location and custodian;

**EXHIBIT D**

7.      its disposition, if no location or custodian is specified in response to subpart (6) hereof.

4.      If you contend that the information sought is privileged, please describe with particularity the privilege you believe is applicable, and identify all documents related to the claim of privilege.

5.      "You" or "your" means Defendant AIS, and its present and former agents and other individuals acting or purporting to act on its behalf.

6.      Unless otherwise stated, all references to "Defendants" refer to AIS, Ramon "Ray" Martinez, and DirecTV LLC.

7.      The term "relate to" shall mean refer to, reflect, describe, depict, or be in any way connected to or with the matter discussed.

8.      "Answer" refers to the Answer filed by Defendants AIS and Ramon Martinez on September 14, 2012.

9.      "Installer Employees" refers to the individuals listed on Exhibit A to the Secretary's Complaint, filed August 20, 2012.  Those same individuals are listed on Exhibit A to the Secretary's Amended Complaint, filed November 29, 2012; and the Secretary's Second Amended Complaint, filed April 8, 2013.

Objections

If you object to answering any interrogatory, request for admission or request for production in whole or in part, state your objection and the factual and legal reasons supporting it, and describe the nature of the documents, communications or things not produced or disclosed in a manner that, without revealing the privileged or protected information, will enable Plaintiff

**EXHIBIT D**

to assess the applicability of the privilege or protection.  Any objection which is not so asserted may be deemed waived.

If you object to only a portion of an interrogatory, request for admission or request for production please answer that portion to which you do not object. For each document responsive to these Discovery Requests but withheld by you based upon a claim of privilege, produce a log of such documents that identifies the document, the author and recipient of the document, the date of the document, and the legal doctrine you believe justifies non production. If it is claimed that any requested material is privileged, please state that the claim of privilege is made and set forth all facts alleged to create such privilege and identify such item or information with sufficient particularity to enable Plaintiff to move for production.

## INTERROGATORIES

### Interrogatory No. 1

Describe and explain the method used for computing employees' weekly compensation, and identify and describe all documents and records used in the computation thereof (including, but not limited to, timesheets, schedules, and payroll records), and identify the person(s) responsible for making such computation.  Include in your response information on the role that Defendant DirecTV has in determining employees' compensation.

### OBJECTION:

The Defendant objects to this Interrogatory as identifying and describing all documents and records used in computing an employee's weekly compensation is overly broad and unduly burdensome. *See Halder v. Int'l Tel. & Tel. Co.*, 75 F.R.D. 657, 658 (E.D.N.Y. 1977); *See also Deering Milliken Research Corp v. Texas Elastic Corp.,* 320 F. Supp 805 (D.S.C. 1970).  The Defendant also objects to the Interrogatory as such request is particularly time-consuming,

*Interrogatories to AIS*                                5

## EXHIBIT D

voluminous, and expensive, and the value derived would be relatively minimal, if any, as all of AIS's employee payroll records and earning reports are enclosed in the Defendant's request for production. *See Triangle Mfg. Co. v. Paramount Bag Mfg. Co.*, 35 F.R.D. 540, 542-43 (E.D.N.Y. 1964).

Without waiving the foregoing objections, the Employer answers as follows but reserves the right to supplement as necessary:

AIS technicians are paid by a piece rate scale or per job that they complete.  They track these jobs on a weekly billing sheet and include the time they spend working each day.  Their time begins when they reach either their first job (Remote Technicians) or when they reach the shop, and their time ends when they leave their last job for the day.  They are to account for any lunch breaks that are taken, but most technicians do not record any lunch being taken.  Their total hours are calculated for the week, and their total pay is divided by the number of hours worked to ensure that they are being paid at least minimum wage.  AIS also compensates their overtime by paying an additional ½ their average hourly wage for any overtime hours.  Lisa Kelley calculates the hours and the average hourly wage for payroll.  DirecTV does not have involvement in the payroll process or in determining how we pay our employees.

The method used to compute compensation has not substantially changed since August 21, 2009.

The method used to compute compensation is as follows:

  a. The technician fills out a "Billing Sheet" on which is recorded the number and type of each job completed in the pay period as well as the number of hours that technician worked on each job during that pay period.

//

*Interrogatories to AIS*                         6

**EXHIBIT D**

    b.   Each technician is paid an hourly rate which is calculated by adding all the flat rates for each job completed in the pay period and dividing that total by the total number of hours worked on each job during that pay period.

    c.   If this calculation results in less than minimum wage, the technician is paid minimum wage.

    d.   If the hours worked indicate the technician is working overtime, the technician is paid 1.5 times the calculated rate for that time period for those hours.

For example: using Yair Domingo Servin – page 13 and 14 of "Sept 2011 to Nov 2011 Payroll Summary.pdf" and AIS Billing Sheet 11.11.11 to 11.17.11.pdf, pg 1.

An AIS Technician works 10 jobs during the pay period and reports 92 hours (80 regular hours and 16 overtime hours) The flat rates for the 10 jobs totaled $1,596.20, so the hourly rate for that pay period is: $17.35 per hour. The Technician is paid $17.35 per hour for 92 hours, plus an additional $8.68 per hour for the 16 overtime hours. A gross pay of: $1,735.08 for that pay period.

Each pay period a technician will have a different rate of pay depending upon the jobs completed and the number of hours required to complete the jobs.

The excel spreadsheet "Technician Pay Scale – Base" show the flat rates for different kinds of jobs.

The TimeTrackingGuidelines show the instructions given to technicians to record their time.

**TIMELINE OF CHANGES:**

After the August 2008 Washington State audit Lumin, Inc (the predecessor company to Lantern Light Corp. d/b/a AIS) changed pay structure for all technicians from 1099 subcontractors to employees.

Initially Lumin, Inc. estimated hours based upon the types of jobs being completed (i.e. 3 hours for an install and 1.5 hours for an upgrade).

*Interrogatories to AIS*       7

**EXHIBIT D**

1    In April 2010, Lumin Inc began requiring technicians to record their actual hours.

2    In September 2010, Lumin Inc. began paying overtime rate for overtime hours.

3    After the November 2010 US Department of Labor audit, with information

4    thereby gained, the Time Tracking Guidelines handout was created because technicians

5    were not properly recording their time (e.g. technicians were not including drive times or

6    wait times). There has been ongoing training with technicians to train them to properly

7    track their time.

8    It appears that starting in January, 2011, a customer service incentive plan was

9    added to this. If the technician had a "post call index" in a certain range, they receive a

10   bonus of $2 - $6 / "Paid WO." See document "CCF10242013_00000.pdf – March 5,

11   2012 letter"

12   **Interrogatory No. 2**

13   For any employee who worked in excess of 40 hours per work week, please describe in

14   detail the method of payment, if any, utilized by Respondents for all hours worked over forty

15   (40) per work week (any seven-day work period).

16   **OBJECTION:**

17   The Defendant objects to this Interrogatory as identifying and describing all documents

18   and records used in computing an employee's weekly compensation is overly broad and unduly

19   burdensome. *See Halder v. Int'l Tel. & Tel. Co.*, 75 F.R.D. 657, 658 (E.D.N.Y. 1977); *See also*

20   *Deering Milliken Research Corp v. Texas Elastic Corp.,* 320 F. Supp 805 (D.S.C. 1970).  The

21   Defendant also objects to the Interrogatory as such request is particularly time-consuming,

22   voluminous, and expensive, and the value derived would be relatively minimal, if any, as all of

23   AIS's employee payroll records and earning reports are enclosed in the Defendant's request for

24

25

*Interrogatories to AIS*                                8

**EXHIBIT D**

production. *See Triangle Mfg. Co. v. Paramount Bag Mfg. Co.*, 35 F.R.D. 540, 542-43 (E.D.N.Y. 1964).

Without waiving the foregoing objections, the Employer answers as follows but reserves the right to supplement as necessary:

The average hourly wage of the technician is calculated for the time period worked.  Any hours over 40 per week are paid an additional ½ times that average hourly wage.

See Answer to Interrogatory No. 1.

**Interrogatory No. 3**

Describe the policy and procedures that employees followed in filling out time sheets or otherwise recording time worked.  Specifically describe how employees were instructed to record time spent traveling to and from customer's homes, or time spent at customer's homes when an assignment was not completed.

**OBJECTION:**

The Defendant objects to this Interrogatory as identifying and describing all documents and records used in computing an employee's weekly compensation is overly broad and unduly burdensome. *See Halder v. Int'l Tel. & Tel. Co.*, 75 F.R.D. 657, 658 (E.D.N.Y. 1977); *See also Deering Milliken Research Corp v. Texas Elastic Corp.,* 320 F. Supp 805 (D.S.C. 1970).  The Defendant also objects to the Interrogatory as such request is particularly time-consuming, voluminous, and expensive, and the value derived would be relatively minimal, if any, as all of AIS's employee payroll records and earning reports are enclosed in the Defendant's request for production. *See Triangle Mfg. Co. v. Paramount Bag Mfg. Co.*, 35 F.R.D. 540, 542-43 (E.D.N.Y. 1964).

*Interrogatories to AIS*

9

**EXHIBIT D**

Without waiving the foregoing objections, the Employer answers as follows but reserves the right to supplement as necessary:

Technicians are expected to record and account for all of their time spent on the job throughout the day.  Their day begins when they either arrive on their first job site (Remote Technicians) or at the shop, and it ends when they leave their final job for the day.  They are expected to record their time at each job.  Their total hours include all of the time spent from the start of their day to the end of their day with the exception of any lunch breaks they may record.  This time includes travel time, wait times, etc.

See Answer to Interrogatory No. 1.

**Interrogatory No. 4:**

Please state with detail and specificity any altering of employees' timesheets by Defendant Ray Martinez, Lisa Kelley, or anyone else with AIS.

**OBJECTION:**

The Defendant objects to this Interrogatory as identifying and describing all timesheets is overly broad and unduly burdensome where there are numerous boxes of records that would require sorting and only limited availability of only one person to pull and review records. *See Halder v. Int'l Tel. & Tel. Co.*, 75 F.R.D. 657, 658 (E.D.N.Y. 1977); *See also Deering Milliken Research Corp v. Texas Elastic Corp.,* 320 F. Supp 805 (D.S.C. 1970); *Thomas v. Cate*, No. 1:05-cv-01198-LJO-JMD-HC, 2010 U.S. Dist. LEXIS 21750, at *45 (E.D. Cal. Feb. 19, 2010); *Masters v. Gilmore*, No. 08-cv-02278-LTB-KLM, 2009 U.S. Dist. LEXIS 113059, at *12 (D. Colo. Nov. 17, 2009); *State Farm Mut. v. Injury Rehab. Clinic, Inc.*, No. 07-CV-15129, 2008 U.S. Dist. LEXIS 50507, at *11-12 (E.D. Mich. Jun. 30, 2008); *see also* Fed. R. Civ. P. 33(b)(4).

**EXHIBIT D**

The Defendant also objects to the Interrogatory as such request is particularly time-consuming, voluminous, and expensive, and the value derived would be relatively minimal, if any, as all of AIS's employee payroll records and earning reports are enclosed in the Defendant's request for production. *See Triangle Mfg. Co. v. Paramount Bag Mfg. Co.*, 35 F.R.D. 540, 542-43 (E.D.N.Y. 1964).  *Beach v. City of Olathe*, 203 F.R.D. 489, 493 (D. Kan. 2001); *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 304 (D. Kan. 1996).

Without waiving the foregoing objections, the Employer answers as follows but reserves the right to supplement as necessary:

Billing sheets are adjusted when the amount the technician is billing for, does not match (i.e. is not the same as) what <u>actually</u> should be paid for the job according to specific task that was completed on the job. The adjustment is both positive and negative in amounts meaning the billing amount could be lower or higher depending on the discrepancy and amount of adjustment required.

Moreover,

- Time starting: AIS tracks what time the technicians arrive at the shop and keep a log of this.  If the technicians record a start time different than their actual arrival time that varies by more than five minutes, AIS adjusts the start time to reflect this.

- If the technician records the incorrect billing dates on their time sheets: AIS' work week runs Friday through Thursday.  If a technician records a day's work on the wrong billing sheet, AIS will transfer that information to the correct week of billing.

- If the technician bills for a job that was canceled and never completed, AIS does not pay for that job.  However, if the technician spent time driving to, waiting for, working, etc. on that job, AIS does keep those hours included in their billing.

- If a technician bills the wrong amount (i.e. they say 4 receivers were installed, but actually 5 were installed or vice versa):  AIS will adjust the payment to the technician to reflect the work that was actually completed and close out on the work order.  As stated before, AIS pays the technician for the actual work completed.  If the technician overbills

**EXHIBIT D**

for the job, AIS corrects it, and if the technician under bills for the job, AIS also makes the correction.

**Interrogatory No. 5**

For each employee, state for each workweek, from August 21, 2009, through present, that person's name, occupation, workweek ending date, total hours worked in the workweek, pay period starting and ending date, total hours worked in the pay period, wage rate(s), compensation paid based on regular rate of pay, compensation paid based on the overtime half-time premium rate of pay, total compensation paid, date paid, whether that person is claimed to be exempt and if so the specific exemption, and whether defendant maintained accurate payroll records of all such information.

**OBJECTION:**

The Defendant objects to this Interrogatory on the ground that providing a response is overbroad and unduly burdensome because answering the Interrogatory would require the Defendant to perform an audit. *See Alliance to End Oppression v. Rochford,* 75 F.R.D. 430 (N.D. Ill. 1976).   The Defendant also objects as the Interrogatory in effect requests the Defendant to state the evidence it intends to use to defend each and every issue in trial and invades the province of counsel's mental impressions and evaluations of the case. *See Weber v. Biddle*, 431 P.2d 705 (1967).  Counsel is not required to do opponent's research or investigation.

Without waiving the foregoing objections, please see disc provided in Defendant's Responses to Plaintiff's Request for Production.

The rate of pay for each technician will be different for each pay period.  The payroll summaries show the regular rate of pay for each technician as well as their overtime rate of pay and overtime hours worked.

*Interrogatories to AIS*                    12

**EXHIBIT D**

**Interrogatory No. 6**

Please describe with detail and specificity any changes to AIS's recordkeeping, including hours worked and employee pay, since August 21, 2009.

**OBJECTION:**

The Defendant objects to this Interrogatory as identifying and describing all documents and records used in computing an employee's weekly compensation is overly broad and unduly burdensome. *See Halder v. Int'l Tel. & Tel. Co.*, 75 F.R.D. 657, 658 (E.D.N.Y. 1977); *See also Deering Milliken Research Corp v. Texas Elastic Corp.*, 320 F. Supp 805 (D.S.C. 1970).  The Defendant also objects to the Interrogatory as such request is particularly time-consuming, voluminous, and expensive, and the value derived would be relatively minimal, if any, as all of AIS's employee payroll records and earning reports are enclosed in the Defendant's request for production. *See Triangle Mfg. Co. v. Paramount Bag Mfg. Co.*, 35 F.R.D. 540, 542-43 (E.D.N.Y. 1964).

Without waiving the foregoing objections, the Employer answers as follows but reserves the right to supplement as necessary:

In 2009, technicians were not recording their hours.  They had previously worked as subcontractors for Lumin Inc.  AIS was not aware of how their hours should be tracked, and they were not concerned with that tracking, because they were used to working on the piece rate system, and they understood the benefit of being paid for the work they could complete.  In 2010, as a company, AIS became aware of the requirement to track their hours according to Washington State standards. AIS began asking our technicians to record their hours so that we could ensure they were being paid at least minimum wage.  It was a slow process of getting them to shift gears to do so.  AIS  also began to compensate them for any overtime hours worked

*Interrogatories to AIS*                                     13

**EXHIBIT D**

1   (overtime hours are primarily seen in the 3rd and 4th quarters).  While it has taken time to change

2   processes, we are confident that we have been tracking all hours properly for the past 2 + years.

3       AIS became aware of the requirement to track their hours in the spring of 2010, most

4   likely April.  AIS became aware of Washington State Laws when a question was raised of how

5   AIS should compensate the technicians for the monthly meetings.  Up until that time, AI had the

6   technicians add an additional $10 to their billing sheets (the meetings were under an hour in

7   length).  AIS called and spoke with a representative with the DOLI in Washington.  He said that

8   according to Washington State Laws, AIS needed to ensure that the employees were paid

9   minimum wage for all of their working hours.  This could be calculated on an average per pay

10   period.

11

12       AIS sent emails to all of the technicians that used emails.  AIS also had its supervisors go

13   over time-tracking with their teams of technicians.  AIS did not discipline any technicians for

14   not recording their hours other than returning their billing sheets to them until they filled their

15   hours in.

16       The payroll summaries due break out the overtime hours.  Overtime is calculated by

17   computing the average hourly wage for the time period, and paying .5 of that hourly wage for all

18   hours worked above 40 per week.

19       AIS went through our billing sheets again in the fall of 2011.  At that time, AIS was

20   consistently paying overtime according the guidelines that she had communicated to us.  After

21   looking at the billing sheets in August or September 2011, AIS pointed out that some of the

22   technicians were not counting their time between jobs, and that that time should be included in

23   their hours as well.  AIS made this final correction, and from September 2011, it is believed that

24   AIS has fully complied with all of the requirements.

25

*Interrogatories to AIS*                                            14

**EXHIBIT D**

Lumin Inc. is the corporation that this audit originally started with.  Lantern Light Corp is the successor corporation of Lumin Inc

**Interrogatory No. 7:**

State the facts and reasons upon which you base your statement in paragraph 5(c) of the Answer that "At all times relevant to this Complaint, Defendant DirecTV was an employer within the meaning of the FLSA in that it acted directly or indirectly in the interest of Defendant AIS's employees."

**OBJECTION:**

The Defendant objects as Interrogatory seeks information or access to privileged attorney-client communications or privileged materials subject to the attorney-work immunity. *See United States v. One Tract of Real Prop. Together With All Bldgs., Improvements, Appurtenances & Fixtures*, 95 F.3d 422, 427 (6th Cir. 1996); *see also See Munzer v. Swedish American Line*, 35 F. Supp. 493, 497 (S.D.N.Y. 1940).  The Defendant also objects as the Interrogatory in effect requests the Defendant to state the evidence it intends to use to defend each and every issue in trial and invades the province of counsel's mental impressions and evaluations of the case. *See Weber v. Biddle*, 431 P.2d 705 (1967).  Counsel is not required to do opponent's research or investigation.

Objection is because the discovery sought is obtainable from some other source that is more convenient, less burdensome, and less expensive (i.e. DirecTV is in the best position to answer questions about DirecTV).

Objection also as the Interrogatory is vague and ambiguous as Interrogatory No. 5 does not have a part 5(c).

*Interrogatories to AIS*                                         15

**EXHIBIT D**

Without waiving the foregoing objections, Defendant does not assert and therefore does not have facts to support the statement that "all times relevant to this Complaint, Defendant DirecTV was an employer within the meaning of the FLSA in that it acted directly or indirectly in the interest of Defendant AIS's employees."

Please refer to the Defendants' Amended Answer to the Complaint for Violations of the Fair Labor Standard Act.

**Interrogatory No. 8**

Please describe with detail and specificity how AIS is paid by DirecTV for work performed by the Installer Employees.

**ANSWER:**

The Defendant objects to this Interrogatory as identifying and describing all payments is overly broad and unduly burdensome where there are numerous boxes of records that would require sorting and only limited availability of only one person to pull and review records. *See Halder v. Int'l Tel. & Tel. Co.*, 75 F.R.D. 657, 658 (E.D.N.Y. 1977); *See also Deering Milliken Research Corp v. Texas Elastic Corp.,* 320 F. Supp 805 (D.S.C. 1970); *Thomas v. Cate*, No. 1:05-cv-01198-LJO-JMD-HC, 2010 U.S. Dist. LEXIS 21750, at *45 (E.D. Cal. Feb. 19, 2010); *Masters v. Gilmore*, No. 08-cv-02278-LTB-KLM, 2009 U.S. Dist. LEXIS 113059, at *12 (D. Colo. Nov. 17, 2009); *State Farm Mut. v. Injury Rehab. Clinic, Inc.*, No. 07-CV-15129, 2008 U.S. Dist. LEXIS 50507, at *11-12 (E.D. Mich. Jun. 30, 2008); *see also* Fed. R. Civ. P. 33(b)(4).

The Defendant also objects to the Interrogatory as such request is particularly time-consuming, voluminous, and expensive, and the value derived would be relatively minimal, if any, as all of AIS's employee payroll records and earning reports are enclosed in the Defendant's request for production. *See Triangle Mfg. Co. v. Paramount Bag Mfg. Co.*, 35 F.R.D. 540, 542-

*Interrogatories to AIS*                                    16

**EXHIBIT D**

43 (E.D.N.Y. 1964).  *Beach v. City of Olathe*, 203 F.R.D. 489, 493 (D. Kan. 2001); *Pulsecard,*

*Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 304 (D. Kan. 1996).

      Without waiving the foregoing objections, the Employer answers as follows but reserves

the right to supplement as necessary:

      AIS is paid for the jobs that they complete for DirecTV. AIS is paid on a weekly basis by

DirecTV.  The payments are approximately 11 days after a billing week closes.  The amount paid

to AIS varies based on the amount of work completed. AIS  also receives monthly incentives and

have chargebacks for equipment shortage or service calls that are deducted weekly from the

payment.  Please see disc provided in Defendant's Responses to Plaintiff's Request for

Production.

      Specifically, AIS is on a line item basis from DIRECTV.   The variance of payment per

job is based on both the type of job completed (Upgrade or Install – there is a base pay for each

of these 2 types of jobs that does not vary) and the equipment that is installed with each.  Various

line items include receivers installed, selling a protection plan, installing advanced dishes, etc.

Each line item pays a set amount, and AIS' total payment for each job is calculated by adding the

base pay for either the install or the upgrade, along with each additional line for that job.  Please

note that a copy of AIS' contract with DirecTV along with our Rate Card was provided to the

Department of Labor in their initial investigation.  Although there have been changes made to

that Rate Card with the renewal of AIS' contract, there has been very little change to it.

      The Defendant would agree to allow the Plaintiff to arrange for personal inspection at

Defendant's premises, upon a mutually agreeable time, to inspect and copy any additional

requested information at Plaintiff's own expense.

*Interrogatories to AIS*                                        17

**EXHIBIT D**

Attached is the current rate card that AIS is working from along with a memo stating what AIS' current Post Call Incentive is based on.  This is a monthly incentive.  As far as chargebacks, AIS has charges (currently $53 each) for each repeat service call for jobs completed by our technicians within 90 days of service and any damage claims that we have approved payment of deducted from our weekly deposit.  Once per month, AIS is charged for any inventory shortages, any background checks that we have run through Directv's account for our new hires and service charges for Directv Handheld Devices (used by technicians to update and close out jobs) that AIS is using.

**Interrogatory No. 9**

Please describe with detail and specificity the total amount paid to AIS by DirecTV during the relevant time period, including how often AIS was paid by DirecTV, as well as whether and how the amount varied in any given year during the relevant time period.

**OBJECTION:**

The Defendant objects to this Interrogatory on the ground that providing a response is overbroad and unduly burdensome because answering the Interrogatory would require the Defendant to perform an audit. *See Alliance to End Oppression v. Rochford,* 75 F.R.D. 430 (N.D. Ill. 1976).   The Defendant also objects as the Interrogatory in effect requests the Defendant to state the evidence it intends to use to defend each and every issue in trial and invades the province of counsel's mental impressions and evaluations of the case. *See Weber v. Biddle*, 431 P.2d 705 (1967).  Counsel is not required to do opponent's research or investigation.

The Defendant objects to this Interrogatory as identifying and describing all payments is overly broad and unduly burdensome where there are numerous boxes of records that would require sorting and only limited availability of only one person to pull and review records. *See*

*Interrogatories to AIS*                                    18

**EXHIBIT D**

*Halder v. Int'l Tel. & Tel. Co.*, 75 F.R.D. 657, 658 (E.D.N.Y. 1977); *See also Deering Milliken Research Corp v. Texas Elastic Corp.,* 320 F. Supp 805 (D.S.C. 1970); *Thomas v. Cate*, No. 1:05-cv-01198-LJO-JMD-HC, 2010 U.S. Dist. LEXIS 21750, at *45 (E.D. Cal. Feb. 19, 2010); *Masters v. Gilmore*, No. 08-cv-02278-LTB-KLM, 2009 U.S. Dist. LEXIS 113059, at *12 (D. Colo. Nov. 17, 2009); *State Farm Mut. v. Injury Rehab. Clinic, Inc.*, No. 07-CV-15129, 2008 U.S. Dist. LEXIS 50507, at *11-12 (E.D. Mich. Jun. 30, 2008); *see also* Fed. R. Civ. P. 33(b)(4).

The Defendant also objects to the Interrogatory as such request is particularly time-consuming, voluminous, and expensive, and the value derived would be relatively minimal, if any, as all of AIS's employee payroll records and earning reports are enclosed in the Defendant's request for production. *See Triangle Mfg. Co. v. Paramount Bag Mfg. Co.*, 35 F.R.D. 540, 542-43 (E.D.N.Y. 1964).  *Beach v. City of Olathe*, 203 F.R.D. 489, 493 (D. Kan. 2001); *Pulsecard, Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 304 (D. Kan. 1996).

Without waiving the foregoing objections, the Employer answers as follows but reserves the right to supplement as necessary:

AIS is paid on a weekly basis by DirecTV.  The payments are approximately 11 days after a billing week closes.  The amount paid to AIS varies based on the amount of work completed. AIS  also receives monthly incentives and have chargebacks for equipment shortage or service calls that are deducted weekly from the payment.  Please see disc provided in Defendant's Responses to Plaintiff's Request for Production for documents. As such, to how much AIS was paid and the variance regarding same, it is all dependent on the amount of work AIS performs.

*Interrogatories to AIS*

19

**EXHIBIT D**

The Defendant would agree to allow the Plaintiff to arrange for personal inspection at Defendant's premises, upon a mutually agreeable time, to inspect and copy any additional requested information at Plaintiff's own expense.

Lumin Inc and Lantern Corp have been paid a combined total of $8,585,940.76 from Directv Home Services from August 21, 2009 through October 24, 2013.  AIS monthly incomes vary with our production.  This is dependent on the number of technicians that we have working along with the volume of work available.  AIS busier (higher producing months) are August through December.

You are welcome to come to the offices of AIS and copy any additional information that you may require.

**Interrogatory No. 10**

Please describe with detail and specificity what percentage of the money received by AIS from DirecTV is used to pay the Installer Employees, and what percentage is retained by AIS.  If the percentage varies based on the type of work performed, or has varied over time, please specify how and to what extent.

**OBJECTION:**

The Defendant objects to this Interrogatory as identifying all documents and records used in computing a percentage is overly broad and unduly burdensome. *See Halder v. Int'l Tel. & Tel. Co.*, 75 F.R.D. 657, 658 (E.D.N.Y. 1977); *See also Deering Milliken Research Corp v. Texas Elastic Corp.*, 320 F. Supp 805 (D.S.C. 1970).  The Defendant also objects to the Interrogatory as such request is particularly time-consuming, voluminous, and expensive, and the value derived would be relatively minimal, if any, as all of AIS's employee payroll records and

*Interrogatories to AIS*                              20

**EXHIBIT D**

earning reports are enclosed in the Defendant's request for production. *See Triangle Mfg. Co. v. Paramount Bag Mfg. Co.*, 35 F.R.D. 540, 542-43 (E.D.N.Y. 1964).

Without waiving the foregoing objections, the Employer answers as follows but reserves the right to supplement as necessary:

Approximately 50% of what AIS receives in payment from DirecTV gets paid to the technicians.  As new equipment is introduced a new line item (which reflects payment for the new equipment) is made with a payment amount for our technicians have been added to account for that, and some line items have become obsolete.

It is difficult to give a more precise percentage of AIS' income as it is paid to the technicians because they are not paid a percentage.  Technicians are paid on a piece rate scale. The actual percentage will vary depending on the ratio of the types of jobs (installs vs. upgrades) completed during a billing cycle.  Installs (which AIS does a much higher volume of) pay more, than upgrades.

Please see disc provided in Defendant's Responses to Plaintiff's Request for Production. The Defendant would agree to allow the Plaintiff to arrange for personal inspection at Defendant's premises, upon a mutually agreeable time, to inspect and copy any additional requested information at Plaintiff's own expense.

This would be extremely time-consuming to compute for the time-period you are asking. I am attaching a copy of our employee payscale so that you can easily match up the rate we are paid vs what we paid our technicians for each line item.   We are willing to allow you access at our offices to all of our technician billing sheets along with the coinciding commission statements for each weeks' billing if you would like to make these computations.  See attached Employee Pay Scale and Rate card.

*Interrogatories to AIS*                                         21

**EXHIBIT D**

For example, comparing "Technician Pay Scale" spreadsheet to "AIS Rate Card" it appears the technician employee is paid $50 for each installation and a contractor is paid $60, while AIS is paid $65 for Install, while AIS is paid $41 for each upgrade and the technician employee is paid $25 and contractors are paid $25-$30. However each job will have different parts which are all paid at differing rates.

**Interrogatory No. 11**

Please describe with detail and specificity what other companies, besides DirecTV, that AIS performed work for, the type of work performed for those other companies, and the amount that AIS is paid for work performed for those other companies.

**ANSWER:**

The Defendant objects to this Interrogatory as identifying and describing all timesheets is overly broad and unduly burdensome where there are numerous boxes of records that would require sorting and only limited availability of only one person to pull and review records. *See Halder v. Int'l Tel. & Tel. Co.*, 75 F.R.D. 657, 658 (E.D.N.Y. 1977); *See also Deering Milliken Research Corp v. Texas Elastic Corp.,* 320 F. Supp 805 (D.S.C. 1970); *Thomas v. Cate*, No. 1:05-cv-01198-LJO-JMD-HC, 2010 U.S. Dist. LEXIS 21750, at *45 (E.D. Cal. Feb. 19, 2010); *Masters v. Gilmore*, No. 08-cv-02278-LTB-KLM, 2009 U.S. Dist. LEXIS 113059, at *12 (D. Colo. Nov. 17, 2009); *State Farm Mut. v. Injury Rehab. Clinic, Inc.*, No. 07-CV-15129, 2008 U.S. Dist. LEXIS 50507, at *11-12 (E.D. Mich. Jun. 30, 2008); *see also* Fed. R. Civ. P. 33(b)(4).

The Defendant also objects to the Interrogatory as such request is particularly time-consuming, voluminous, and expensive, and the value derived would be relatively minimal, if any, as all of AIS's employee payroll records and earning reports are enclosed in the Defendant's request for production. *See Triangle Mfg. Co. v. Paramount Bag Mfg. Co.*, 35 F.R.D. 540, 542-

*Interrogatories to AIS*                                    22

**EXHIBIT D**

1    43 (E.D.N.Y. 1964).  *Beach v. City of Olathe*, 203 F.R.D. 489, 493 (D. Kan. 2001); *Pulsecard,*

2    *Inc. v. Discover Card Servs., Inc.*, 168 F.R.D. 295, 304 (D. Kan. 1996).

3          Without waiving the foregoing objections, the Employer answers as follows but reserves

4    the right to supplement as necessary:

5          AIS does a small amount of custom installations of entertainment systems for residential

6    and business customers.  Prior to April of 2012, technicians would charge customers directly to

7    perform specified customer labor items. Payments would be made out to AIS, and we would pay

8    the technicians for the extra services. Specifically work for retail customers including selling and

9    installing Dish Network, selling and installing for DirectTV (this is not under Home Services),

10   and AIS has done a few commercials jobs

11

12         Please see disc provided in Defendant's Responses to Plaintiff's Request for Production.

13   The Defendant would agree to allow the Plaintiff to arrange for personal inspection at

14   Defendant's premises, upon a mutually agreeable time, to inspect and copy any additional

15   requested information at Plaintiff's own expense.

16   - **DC's Bar & Grill - $1,318.03**
17   - **Pacific Digital Systems - $1,105.96**
     - **RS&I - $13,266.05**
18   - **Dish Network - $13,266.05**
     - **Directv Retail Services - $126,939.96**
19

20   **Interrogatory No. 12**

21         Please describe with detail and specificity how AIS and DirecTV communicated with the

22   Installer Employees during those employees' shift regarding the status of the employee's work.

23   Include in your response who handled such communication.

24   **ANSWER:**

25

*Interrogatories to AIS*                    23

**EXHIBIT D**

1   DirecTV has no communication with any AIS technician. AIS supervisors (currently

2   Matt Henderson, Ryan Caldara, Justin Masencup & Ray Martinez) communicate directly with

3   AIS employees regarding many aspects of their work including appointment statuses.

4   Communication with AIS employees consists of phone calls, emails & meetings.

5   Outside of the changes to billing/payroll calculations that are described above, AIS

6   cannot think of any other significant changes to procedures and practices.

7   **Interrogatory No. 13**

8   Please describe with detail and specificity how AIS and DirecTV determined which

9   assignments should be completed by which Installer Employee.  Include in your response who

10   made such decisions.

11

12   **ANSWER:**

13   Work assignments are assigned based upon proximity to a technicians start location

14   which is usually their home or a location designated by AIS. All technicians are issued a tech

15   number which is built into a database that, based on a technicians work schedule, assigns

16   appointments daily. AIS designates a technician's start location, work schedule & working

17   radius. DIRECTV's computer systems assigns appointments based on that criteria automatically.

18   AIS manages all assignments daily (usually early morning) and has complete ownership of said

19   assignments. If assignments need to be moved to another technician, for whatever reason, AIS

20   has the ability to do so. DIRECTV has no say as to who AIS decides who does what.

21   Outside of the changes to billing/payroll calculations that are described above, AIS

22   cannot think of any other significant changes to procedures and practices.

23

24

25

*Interrogatories to AIS*                                   24

**EXHIBIT D**

**Interrogatory No. 14**

Please describe with detail and specificity how Installer Employees are trained to perform their duties.  Include in your response who provides such training, and who creates the content for such training.

**ANSWER:**

Presently, AIS has a trainer on staff that is responsible for training our technicians. This includes viewing some training videos provided by DirecTV. However, the majority of the training is in the field, performing jobs with our designated AIS trainer (i.e. new hires ride out with the experienced technicians). Several years ago (exact time period cannot be recalled) the Tumwater, WA office (now Lacey, WA office) would hold monthly meetings with technicians where a video would be played.

For the period covered by the initial investigation, new technicians were trained by AIS supervisors and other technicians employed by AIS.  They spent a few hours in our office with our supervisors viewing training videos provided by DirecTV.  Outside of that, they were in the field with AIS employees learning from experienced technicians and supervisors.  Currently, AIS has a full-time employee dedicated solely to training new hires.  We still use some DirecTV Training Videos (about 3 hours worth), and the rest of the training is in the field with an AIS trainer, supervisors and experienced technicians.

Outside of the changes to billing/payroll calculations that are described above, AIS cannot think of any other significant changes to procedures and practices.

**Interrogatory No. 15**

Please describe with detail and specificity whether AIS or DirecTV provided the materials required for the Installer Employees to perform their duties, including the tools and equipment.

*Interrogatories to AIS*                                25

**EXHIBIT D**

**ANSWER:**

Technicians provide their own basic hand tools and ladders.  AIS provides all satellite specific tools, small parts, cabling, etc.   DirecTV provides AIS with their equipment that the customers will be leasing to install in the customer homes. Outside of the changes to billing/payroll calculations that are described above, AIS cannot think of any other significant changes to procedures and practices.

**Interrogatory No. 16**

Please describe with detail and specificity what role, if any, DirecTV has in the hiring, firing, or disciplining of the Installer Employees.

**ANSWER:**

DirecTV has no role in the hiring, firing or disciplining of any AIS employee.  Outside of the changes to billing/payroll calculations that are described above, AIS cannot think of any other significant changes to procedures and practices.

**Interrogatory No. 17**

Please describe, in detail and with specificity, what changes, if any, AIS made in its payment practices after the 2008 investigation by the State of Washington.

**ANSWER:**

After being audited by the WA State DOLI, All Nations Communications changed the majority of the technicians from subcontractors to employees. As the workforce from All Nations Communications to AIS did not mean all employees were retained, a "majority" of technicians became employees that wanted to stay and/or AIS wanted to stay. The audit compelled the changes.

*Interrogatories to AIS*                                    26

**EXHIBIT D**

Please see answers above that outline our changes to the audit performed by Washington State.  Currently, all of our technicians work as employees.  AIS did retain one technician as subcontractor until May 2013.  This subcontractor fit the guidelines to work as a subcontractor, and he did not want to convert to an employee.

**Interrogatory No. 18**

State the facts and reasons upon which you deny the Secretary's allegations in paragraphs 8-11 of his initial Complaint, filed August 20, 2012, and identify any person with relevant knowledge thereof.

**OBJECTION:**

The Defendant objects as Interrogatory seeks information or access to privileged attorney-client communications or privileged materials subject to the attorney-work immunity. *See United States v. One Tract of Real Prop. Together With All Bldgs., Improvements, Appurtenances & Fixtures*, 95 F.3d 422, 427 (6th Cir. 1996); *see also See Munzer v. Swedish American Line*, 35 F. Supp. 493, 497 (S.D.N.Y. 1940).  The Defendant also objects as the Interrogatory in effect requests the Defendant to state the evidence it intends to use to defend each and every issue in trial and invades the province of counsel's mental impressions and evaluations of the case. *See Weber v. Biddle*, 431 P.2d 705 (1967).  Counsel is not required to do opponent's research or investigation.

Without waiving the foregoing objections, please see answers to Interrogatories 1-17 and disc provided in Defendant's Responses to Plaintiff's Request for Production. Specifically:

- AIS technicians are paid by a piece rate scale or per job that they complete.  They track these jobs on a weekly billing sheet and include the time they spend working each day.  Their time begins when they reach either their first job (Remote Technicians) or when

*Interrogatories to AIS*                    27

**EXHIBIT D**

they reach the shop, and their time ends when they leave their last job for the day.  They are to account for any lunch breaks that are taken, but most technicians do not record any lunch being taken.  Their total hours are calculated for the week, and their total pay is divided by the number of hours worked to ensure that they are being paid at least minimum wage.  AIS also compensates their overtime by paying an additional ½ their average hourly wage for any overtime hours.

- Lisa Kelley calculates the hours and the average hourly wage for payroll. In addition Ray Martinez would also have knowledge of the practices and basis for the defendant's response.

- DirecTV does not have involvement in the payroll process or in determining how we pay our employees.

- Technicians are expected to record and account for all of their time spent on the job throughout the day.  Their day begins when they either arrive on their first job site (Remote Technicians) or at the shop, and it ends when they leave their final job for the day.  They are expected to record their time at each job.  Their total hours include all of the time spent from the start of their day to the end of their day with the exception of any lunch breaks they may record. This time includes travel time, wait times, etc.

- In 2009, technicians were not recording their hours.  They had previously worked as subcontractors for Lumin Inc.  AIS was not aware of how their hours should be tracked, and they were not concerned with that tracking, because they were used to working on the piece rate system, and they understood the benefit of being paid for the work they could complete.  In 2010, as a company, AIS became aware of the requirement to track their hours according to Washington State standards. AIS began asking our technicians to

*Interrogatories to AIS*                         28

**EXHIBIT D**

record their hours so that we could ensure they were being paid at least minimum wage. It was a slow process of getting them to shift gears to do so. AIS also began to compensate them for any overtime hours worked (overtime hours are primarily seen in the 3rd and 4th quarters). While it has taken time to change processes, we are confident that we have been tracking all hours properly for the past 2 + years.

- AIS is paid for the jobs that they complete for DirecTV. AIS is paid on a weekly basis by DirecTV. The payments are approximately 11 days after a billing week closes. The amount paid to AIS varies based on the amount of work completed. AIS also receives monthly incentives and have chargebacks for equipment shortage or service calls that are deducted weekly from the payment.

- Approximately 50% of what AIS receives in payment from DirecTV gets paid to the technicians. As new equipment is introduced a new line item (which reflects payment for the new equipment) is made with a payment amount for our technicians have been added to account for that, and some line items have become obsolete.

- AIS does a small amount of custom installations of entertainment systems for residential and business customers. Prior to April of 2012, technicians would charge customers directly to perform specified customer labor items. Payments would be made out to AIS, and we would pay the technicians for the extra services.

- DirecTV has no communication with any AIS technician. AIS supervisors (currently Matt Henderson, Ryan Caldara, Justin Masencup & Ray Martinez) communicate directly with AIS employees regarding many aspects of their work including appointment statuses. Communication with AIS employees consists of phone calls, emails & meetings.

*Interrogatories to AIS*                          29

**EXHIBIT D**

**Interrogatory No. 19:**

Please list with specificity and detail each and every fact, and identify any document, upon which Defendant AIS relies on for the affirmative defense in their Answer that "[t]he Defendant alleges that if the Secretary is able to prove violations of the Act as set forth in the Complaint, the Citations should be vacated on the basis of administrative exemption, good faith, waiver and/or based upon the statute of limitations," and identify any person with relevant knowledge thereof.

**OBJECTION:**

The Defendant asserts no affirmative defense. Please refer to the Defendants' Amended Answer to Complaint for Violations of the Fair Labor Standard Act.

**Interrogatory No. 20**

Identify each person whom you plan to call as a witness at the trial in this matter and a description of the specific facts (and opinions should you plan to call expert witnesses) you expect each person's testimony to be.

**OBJECTION:**

The Defendant objects on the grounds that this Interrogatory is premature; the Defendant is not yet required to, and has not, identified its witnesses for hearing.  Without waiving the foregoing objections, the Defendant answers as follows, but reserves the right to supplement as necessary.

Ramon Martinez, Defendant- Mr. Martinez is expected to testify about the allegations in the Complaint, facts related to affirmative defenses, and be examined as to all matters within his knowledge related to the claims in this matter.

*Interrogatories to AIS*                                    30

**EXHIBIT D**

Lisa Kelley, Management- Ms. Kelley is expected to testify about the allegations in the Complaint, facts related to affirmative defenses, and be examined as to all matters within her knowledge related to the claims in this matter.

**Interrogatory No. 21**

Explain the basis of any denial of any of the Secretary's Requests for Admissions.

**ANSWER:**

Please see Defendant's responses to Plaintiff's First Requests for Admissions and disc provided in Defendant's Responses to Plaintiff's Request for Production.

DATED this 17th day of January, 2014.

AMS LAW, P.C.

*/s/: Jennifer L. Truong*
Jennifer L. Truong, WSBA No. 40004
AMS Law, P.C.
1711 South Jackson Street
Seattle, Washington 98144
360-459-0751
jliutruong@amslaw.net

*Interrogatories to AIS*

31

**EXHIBIT D**

**CERTIFICATE OF SERVICE**

I, Brittany Plotnikoff, hereby certify under penalty of perjury under the laws of the State of Washington that on January 17, 2014, I filed via electronic mail and U.S. Certified Mail, he original of the following document:

1.      DEFENDANT AIS' FOUTH SUPPLEMENTAL ANSWERS TO PLAINTIFF'S
        DISCOVERY.

Served upon:

**Joseph M. Lake, Trial Attorney**
U.S. Department of Labor
Office of the Solicitor
90 Seventh Street
Suite 3-700
San Francisco, CA 94103-1516

SIGNED in Seattle, Washington on January 17, 2014

        _/s/: Brittany Plotnikoff_____
        Brittany Plotnikoff

*Interrogatories to AIS*                                    32

**EXHIBIT D**